## STATE EX REL. IJAMS v. BURDICK, STATE AUDITOR.

LIVE STOCK COMMISSION—SECRETARY—SALARY OF—APPROPRIATIONS.

1. The salary of the secretary of the board of live stock commissioners is a proper charge upon the inspection fund created by chapter 33, Laws of 1890-91.

2. Such fund is a continuing fund and may be used for the purposes of the commission.

[Decided October 2, 1893.]

Original proceeding in mandamus, whereby H. B. Ijams, secretary of the board of live stock commissioners, sought to require Charles W. Burdick, the state auditor, to issue a warrant for his salary as such secretary for the month of April, 1893, against the inspection fund provided for in the act approved January 8, 1891, creating the board of live stock commissioners. The case was heard upon demurrer to the petition. The material facts and the legislation upon which a decision of the question involved depended are set forth in the opinion.

*Frank H. Clark,* for relator.

A reasonable construction of the act, notwithstanding the apparent conflict between certain of its provisions, authorizes the salary of the relator to be paid out of the inspection fund. The general rules of construction with reference to appropriations applied in the cases of State ex rel. Henderson v. Burdick and State ex rel. Holcombe v. Burdick, must control this case and favor the case of relator. The apparent intention of the legislature discovered by looking into the whole of the statute, its subject matter, effects and consequences, the reason and spirit of the act, was obviously to make the commission a self-sustaining one, deriving its funds from the sale of estrays, the money for which had remained unclaimed for more than one year, and to devote this fund to no other purpose than the expenditures contemplated by the act. This must govern in the construction. (Riggs v. Palmer, 5 L. R. A., 340; Oates v. First N. Bank, 100 U. S., 239; Vt. Loan & Trust Co. v. Wieted, 49 N. W., 318; Gray v. Cumberland Co., &c., 22 Atl., 376; Pearson v. Hays, 61 N. H., 264; Small v. Small, 18 Atl., 497; Ryegate v. Wardsboro, 30 Vt., 746; State v. Williams, 35 Mo. App., 541.) Sec. 21 conforms to the obvious intent of the act, the repugnant words in Sec. 30 do not, therefore, render the former section inoperative. (McCormick v. W. Duluth, 50 N. W., 128; Hoey v. Gilroy, 29 N. E., 85; State v. Williams, supra.) The unclaimed balances of the "estray fund" must be carried into the inspection fund and devoted exclusively to the

purposes of the act. The fund thus established is "appropriated by law."

*Charles N. Potter,* Attorney General, for respondent.

GROESBECK, CHIEF JUSTICE.

The relator applies to this court for a peremptory writ of mandamus commanding the state auditor to draw a warrant in his favor on the inspection fund in the state treasury. The cause was submitted upon the petition for the writ and the demurrer thereto. The relator Ijams is the duly and regularly appointed, qualified and acting secretary of the board of the live stock commissioners, a commission created and organized under the laws of this state. In accordance with the statute his salary was fixed by said board for the term of two years, including the month of April, 1893, at the rate of $1,200.00 per annum, which under the terms of the act is required to be paid in monthly installments of $100.00 each. On July 5, 1892, he paid over and delivered to the state treasurer, in accordance with the provisions of the act, the sum of $606.13, the amount being unclaimed moneys derived from the sale of estrays under the act, and this amount remains in the custody of the treasurer intact and unexpended and constitutes the only moneys of any kind which have been received by the treasurer under the act. On August 2, 1893, the relator rendered to the defendant, the state auditor, his account for salary for the month of April, 1893, duly verified and certified as required by law, which was disallowed by the auditor for the following reason endorsed upon the account: "No appropriation having been made by the second state legislature for the expenses of the Wyoming live stock commission for the current year, this claim is therefore disallowed." These facts are admitted to be true in the submission of the case. The controversy is entirely upon the construction to be given to the statute creating the board of live stock commissioners (Chap. 33 Sess. Laws, 1890-91). On the one hand it is urged that the unclaimed moneys for the sale of estrays received by the secretary of the commission must be paid into the general fund

of the state, and on the other that they must be held in a separate and distinct fund, designated in the act as the inspection fund, and subject to the order of the board of live stock commissioners.

Legislation in this jurisdiction for the protection of the live stock interests has been a fruitful one, and it is marvelous that such a confusion of provisions in the same act should be found after so many repeated trials on the part of the legislature to obtain a satisfactory law on the subject.

It seems difficult to reconcile the conflicting provisions of the act before us, and in order to ascertain the legislative intent we must look to prior legislation on the same subject. It is not necessary to review the legislation at every session in this respect to do this. The act passed by the tenth legislative assembly of the territory (Chap. 28, Sess. Laws 1888), provided for the sale of mavericks or cattle whose ownership could not be ascertained, the proceeds of which was directed to be paid into an inspection fund, and the proceeds of all estrays shipped with other cattle of undoubted ownership were directed to be paid to the secretary of the live stock commission and constituted the "estray stock fund" to be paid over to the owners, if discovered, and if not discovered after advertisement describing the cattle, to be paid by the secretary to the territorial treasurer to the credit of the inspection fund provided by the act. No appropriation was made by this legislative assembly for the expenses of the live stock commission and the inspection officers, stationed at various shipping points within and without the state, from the general fund, and it is clear from the express term of the act itself that all such charges were to be paid out of the inspection fund, into which the unclaimed moneys for estrays and the proceeds of the sale of mavericks were directed to be paid. The Eleventh Legislative Assembly of the Territory, by chapter 53 of the session laws for 1890, provided that the moneys realized from the proceeds of mavericks sold and unclaimed estray money should be paid into the general fund of the state, and appropriated the sum of ten thousand dollars for the "purposes of the live stock commission, defined

and provided for" in the act for the year ending March 31, 1891, the close of the fiscal year, as defined by statute. This appropriation for but one year instead of the customary biennial period was doubtless within view of an act passed by the same legislature, providing for the meeting of the next territorial legislature in the following January, which became nugatory by the admission of the state into the Union July 10, 1890. By a succeeding chapter of the session laws of 1890 the moneys in the possession of the commission or coming into its hands on or before March 31, 1890, "from the proceeds of mavericks or unknown estrays," were to be covered into the treasury to the credit of the general fund, and any balance to the credit of the inspection fund created by chapter 28, Sess. Laws 1888, supra, on said date, was directed to become part of the general fund on that date; and the act of 1888 was repealed. Then the inspection fund provided for by the statute of 1888, out of which the expenses of the commission, including the inspection of live stock, were to be paid was supplanted by the act of 1890, under the terms of which the commission was to be supported and live stock inspected under the specific appropriation made in the act, and not by the moneys received from the proceeds of unclaimed estrays and the sale of mavericks, which were directed by the act to be paid over to the general fund. The existing statute (Chap. 33, Sess. Laws 1890-91) repealed anew the act of 1888 and also the act of 1890, and the act was rewritten at length. It contains provisions common to the statutes of 1888 and 1890 and eliminates provisions common to both. The inspection fund of 1888 is revived and by Sec. 21 of the act it is the duty of the state treasurer to keep a separate account of all moneys received by him under this act, designated as the inspection fund, and to pay all warrants properly drawn, as provided in the act, out of said fund, which shall not be used for any other purposes than the expenditures contemplated by the act. Sec. 22 provides that the inspection fund shall be under the control of the board of live stock commissioners, to be expended in such manner as shall best promote the live stock interests of the

state and in conformity with the provisions of the act and for no other purpose, and by following sections it is provided that all of the expenses and indebtedness of the commission are to be paid out of the inspection fund. The provision of the acts of 1888 and 1890 relating to the sale of mavericks are omitted from this act, and the moneys realized from the proceeds of unclaimed estrays are to be kept by the secretary of the commission in the "estray fund," to be paid to the owners upon proof, or in case they do not appear within one year after the publication of estray lists, posted by the county clerk of each county in his office and in a conspicuous place in the court house, to be paid to the state treasurer "and shall go into the general fund of the state." Following this last quoted provision taken from Sec. 30 of the act, is the declaration in Sec. 33 that all fees, salaries, compensation and expenses incurred under the provisions of the act shall be paid out of the inspection fund "hereinbefore provided," and that no fees, salary, compensation or expense incurred under the act "shall ever under any circumstances be paid out of any fund other than the said inspection fund." Sec. 36, the last section of the act, except the one providing for the immediate taking effect of the act, appropriates for the biennial period ending March 31, 1893, the sum of ten thousand dollars, one-half of which for each fiscal year of the said* term, for the purposes of the commission as defined in the act, and "it shall be known as the inspection fund."

We think it manifest from this review of the statute, in the light of prior legislation, and by applying familiar rules of construction, that the legislature intended to restore the inspection fund created by the act of 1888 and abrogated by the act of 1890, so far as it provided for the application of the proceeds derived from unclaimed estrays to the purposes of the live stock commission, notwithstanding the declaration in Sec. 30 of the act that such moneys shall become part of the general fund of the state. The inspection fund is the only fund mentioned prior to Sec. 33 as "hereinbefore provided," and evidently contains the moneys derived from the proceeds of unclaimed estrays which finds its way

through the hands of the secretary of the live stock commission into the state treasury; and the specific appropriation for two fiscal years thereafter provided, although termed the inspection fund, must be considered as only a portion thereof, the other part of it being derived from the proceeds of unclaimed estrays. It will be noticed that the specific appropriation per annum in the statute is reduced one-half from the amount appropriated by the act of 1890, and it would seem that the legislature considered that by restoring to the inspection fund the moneys resulting from the proceeds of unclaimed estrays, with the reduced appropriation, might be sufficient for the purposes of the commission for two years at least, although the provision in Sec. 30 is unambiguous, directing unclaimed estray moneys to be paid into the general fund, it is no clearer than the later section, 33, providing that the expenses of inspection and the support of the commission and its employes must be paid out of the inspection fund "hereinbefore provided," and never under any circumstances out of any other fund.

It follows that the moneys received by the treasurer from the secretary of the live stock commission, not claimed by the unknown owners of estrays, must finally go into the inspection fund, created by the act, even if first it passes into the general fund of the state; otherwise several important sections of the act would be meaningless and the plain legislative intent, gathered from prior legislation, and even from the act itself, would be violated. No specific appropriation was made by the second legislature to defray the expenses of the live stock commission, but the existing statute stands unrepealed and unmodified. The decisions of this court at the present term in the cases of Henderson v. Burdick, (supra) 33 Pac., 125, and Holcombe v. Burdick, (supra) Id., 131, control our decision in this case, under the construction of the act we have now under consideration. As we read the act, the inspection fund must be preserved intact for the use of the live stock commission so long as the existing law is in force.

The semi-annual payments made to the state treasurer by

the secretary of the commission, under the terms of the act, as unclaimed moneys, derived from the sale of estrays, are part of the inspection fund, and since the specific appropriation for the biennial period ending March 31, 1893, is exhausted, they constitute the fund itself.   The salary of the relator is a proper charge upon this fund; it can be paid out of no other fund as the statutes now exist, and it appears that there are sufficient moneys in the fund to pay his claim.   It is a continuing fund, and may be used for the purposes of the commission.

The peremptory writ is allowed, requiring the auditor to audit and allow the claim of the relator and to draw his warrant therefor, upon the treasurer for the payment of the amount of the claim out of the inspection fund.

CONAWAY and CLARK, JJ., concur.