Dorman v. Sargent, Auditor, 20 N. M. 413.

---

[No. 1799, July 2, 1915.]

## DORMAN v. SARGENT, State Auditor.

### SYLLABUS BY THE COURT.

1. Earnest v. Sargent (No. 1800) 150 Pac. 1018, followed as to the passage of House Bill No. 294, creating the office of state traveling auditor.

P. 415.

2. Chapter 59, Laws 1915, Appendix Code 1915, creating the office of state traveling auditor, construed in connection with section 2597, Comp. Laws 1897, and sections 2 and 3 of chapter 32, Laws 1889, held to constitute a continuing appropriation for the salary of the state traveling auditor.

P. 415.

Appeal from District Court, Santa Fé County; Merritt C. Mechem, Judge.

Injunction by Harry H. Dorman against William G. Sargent, as State Auditor. From a judgment for defend-ant, plaintiff appeals. Affirmed.

J. H. CRIST and E. C. WADE, both of Santa Fé, for appellant.

FRANK W. CLANCY, Attorney General, and HARRY S. BOWMAN, Assistant Attorney General, for the appellee.

## OPINION OF THE COURT.

PARKER, J.—This is a proceeding for an injunction brought by the plaintiff against the state auditor. The complaint in the court below alleged, in substance, that the plaintiff is a citizen of the state, and a resident of the city of Santa Fé, county of Santa Fé, and that he is a taxpayer in said county and state, and contributes annual-ly to the treasury of the state as taxes for said purposes a large sum of money; that he brings this action for and on behalf of himself and other taxpayers of the state, all of whom, he alleges, are similarly situated; that the defend-ant is the state auditor of the state; that heretofore the Legislature passed a bill which is known as House Bill No. 294; that said Legislature convened at noon on the 12th day of January, A. D. 1915, and that said session terminated by law at the hour of 12 o'clock of the 12th day of March, 1915; that on the 8th day of March said bill was presented to the Governor of the state for his ap-proval, and that on the 12th day of March the said Gov-ernor returned said bill to the House of Representatives, where it originated, with his objections; that thereafter, in the forenoon of the said 12th day of March, the said bill was approved by two-thirds of the members of and voting in said House of Representatives, the Governor's objec-tions to the contrary notwithstanding; that said bill was thereupon transmitted by the said House to the Senate of said Legislature, and that afterwards, at some time be-

tween the hour of 12:40 p. m. of said day and the
hour of 2 p. m. of said day, the said bill was approved
by the vote of two-thirds of the persons theretofore
constituting the membership of the said Senate, the
Governor's objections to the contrary notwithstanding;
that there is not now, nor has there been at any
time since the close of said session, a journal of the pro-
ceedings of said Senate on file with the secretary of state;
that on the 1st day of April, 1915, the defendant, the
state auditor, under the provisions of said bill pretended-
ly appointed one A. G. Whittier as state traveling auditor,
and one P. A. Hall as assistant traveling auditor, and one
Earl Wiley as assistant traveling auditor, and one Edith
Wileman as stenographer of the office of state traveling
auditor; that the defendant holds out and threatens that
he will, on the 30th day of April, 1915, draw warrants
upon the treasurer of the state for large sums of money
under the alleged authority of said alleged law, as sala-
ries for the payment of said alleged state traveling audi-
tor, his assistants and said stenographer, and will deliver
said warrants to said persons; and that the said alleged
law is not a valid law in this behalf, in that the subject
of said alleged law is not clearly expressed in the title
thereof, and in that there is no valid power or authority
conferred by said alleged law on the defendant as state
auditor for the drawing and delivery of the said warrants
for the payment of said pretended salaries. A demurrer
was interposed to the amended complaint raising all of
the points which will be discussed in the opinion, and was
sustained by the trial court, and the plaintiff has appealed.

[1] It is argued that House Bill No. 294 never be-
came a valid act of the Legislature, because it was passed
over the Governor's veto after the expiration of the time
for the sitting of the Legislature. We have discussed this
point in the case of Howell Earnest, as Traveling Auditor
and Bank Examiner of the State of New Mexico, v. Wil-
liam G. Sargent, 150 Pac. 1018, in an opinion just hand-
ed down, and we have held that the act was passed within
the time prescribed by the Constitution.

[2] It is contended by plaintiff that the act in ques-

tion is not sufficient to confer authority upon the state auditor to pay the salaries for the officers holding the offices created thereby. He argued that the act fails to disclose a legislative intent to make an appropriation: First, on account of the language used therein; and, second, because an item in the general appropriation bill passed at the same session of the Legislature, but vetoed by the Governor, of which he asks the court to take judicial notice, negatives an intent on the part of the Legislature to have made such an appropriation in House Bill No. 294. The language used in House Bill No. 294 (Laws 1915, c. 59) is:

> "The state traveling auditor shall receive an annual salary of $2,400 and his actual and necessary traveling expenses while in the discharge of his duties.".

The plaintiff does not contend, as we understand the argument, that we might not, under some acts creating offices, fixing salaries, and providing the time and manner of payment, and specifying the fund out of which the salary is to be paid, properly hold that such acts would constitute a continuing appropriation, and that no general appropriation would be required. Counsel argue, however, that this act, merely creating the office, and declaring the amount of salary which the officers shall receive, and failing to specify the fund out of which the salary is to be paid and the manner and time of payment, fails to indicate a legislative intent to make the appropriation for the salaries in the same act. The argument has much force. If this act had provided that the salary of the state traveling auditor and his assistants and clerks should be paid monthly out of the general salary fund in the same manner as other public officers, there could be no doubt that the Legislature intended then and there to make the appropriation for the payment of the salaries. The absence of such a provision in the act throws much doubt upon the legislative intent. But it is a cardinal rule that all legislation is to be construed in connection with the general body of the law, and in this case we find several sections of the statute which greatly aid and add to the

words of House Bill No. 294. By section 2597, C. L. 1897, it is provided that the salaries of all officers provided by law shall be paid out by the treasurer of the territory upon the warrant of the auditor. This is an old statute, having been passed in 1852, and has been upon the statute books ever since, and was re-enacted in the Code of 1915 as section 5338. In 1889 an act was passed establishing the fiscal year for the territory. Section 1 of that act is compiled as section 4015, C. L. 1897. The original act was chapter 32, Laws of 1889. Section 2 of that act provides for the establishment of certain funds, among which is the salary fund. In section 3 of the act it is provided that the salary fund shall be used only for the purpose of paying all salaries provided by law. For some reason, which we do not understand, the compilers of the Compiled Laws of 1897 saw fit to regard these sections 2 and 3 of chapter 32 of the Laws of 1889 as either obsolete or repealed, but we have searched in vain for any repeal of the same, and know of no reason why they should be regarded as obsolete. Constant reference is made in subsequent legislation to this salary fund, and it is preserved and maintained by the auditor and treasurer down to the present time. We therefore treat them as still in full force and effect. That being the case, when House Bill No. 294 was passed, it was passed in view of these two sections, and they should be construed in connection with the provisions of House Bill No. 294 under consideration. This act then, in legal effect, is to be read as follows:

"The state traveling auditor shall receive an annual salary of $2,400.00 and his actual and necessary traveling expenses while in the discharge of his duties, and shall be paid his said salary out of the salary fund, upon the warrant of the state auditor, by the state treasurer."

It is true that no provision exists as to just when this salary shall be paid, whether monthly, quarterly, or at the end of the year, but we regard this circumstance as entirely immaterial. If the state traveling auditor is entitled to an annual salary of $2,400, it is a mere matter of administration of the auditor's and treasurer's offices as to

whether they shall pay him monthly or quarterly, or at the end of the year. A taxpayer has no interest as to just when his salary shall be paid, so long as the officer is not overpaid, or paid prior to the rendition of his services. In view of this situation, it seems clear that House Bill No. 294, construed in connection with the former statutes as above pointed out, amounts to a continuing appropriation for the salary of the state traveling auditor.

Similar statutes have been held in some of the states to amount to an appropriation. Thus in Nichols v. Comptroller, 4 Stew. & P. (Ala.) 154, the statute allowed an annual salary of $1,749, payable quarter yearly out of any money in the treasury not otherwise appropriated to the superintendent of the building of the State Capitol of the state of Alabama. The Supreme Court of Alabama conceded that no money could be drawn from the treasury but in pursuance of an appropriation made by law, but it held that, there being a general law fixing the salary of the superintendent, and requiring it to be paid out of the treasury annually or quarter annually, the statute amounted to a continuing appropriation. This case was cited with approval and followed in Reynolds v. Taylor, 43 Ala. 420. In that case the salary provided by law was $2,000 per annum, and the Legislature attempted by an appropriation bill to cut down the salary to $1,000 per annum. The court held that the Legislature had no power by an appropriation of a smaller amount to deprive the officer of his full salary as provided by the act creating his office, and that it is not necessary that there should be a special annual appropriation by act of the Legislature where there is a general law fixing the amount of the salary and prescribing its payment at particular periods.

In People ex rel. Hegwer v. Goodykoontz, 22 Colo. 507, 45 Pac. 414, it was held that an act establishing the office of steam boiler inspector, and providing that such inspector should receive a stated amount as salary "payable as other state officers," taken in connection with the act making the salaries of other state officers payable in monthly installments at the end of each month, constituted an appropriation within the constitutional provision that no

money should be drawn from the treasury except upon appropriations made by law.

In State ex rel. Hawes v. Mason, 153 Mo. 23, 54 S. W. 524, it was held that an act of the Legislature providing for cities of over 300,000 a board of police commissioners, and investing it with power to employ and appoint a police force, as well as the amount of the officers' salaries, which were to be payable monthly, constituted an appropriation authorizing the auditor to draw his warrant for pay rolls certified to him.

In State ex rel. Maddox v. Kenney, 11 Mont 555, 29 Pac. 89, it was held that a statute prescribing a certain standard of compensation for the work of reporter for the Supreme Court, and authorizing the auditor upon its completion, to draw his warrant for the amount due, constituted an appropriation of money.

In State ex rel. Henderson v. Burdick, 4 Wyo. 272, 33 Pac. 125, 24 L. R. A. 266, the Constitution provided that a state examiner should be appointed by the Governor and confirmed by the Senate, and that his compensation should be fixed by law. A subsequent statute was passed to the effect that the state examiner should receive an annual salary of $2,000, which same was to be paid by the treasurer of the state in the same manner as other salaries are paid. The first state Legislature made an appropriation for the state examiner, but the second state Legislature failed to make an appropriation for his salary and expenses for the years 1893 and 1894. The Constitution of Wyoming, like ours, provided that no money should be paid from the treasury of the state except upon appropriations. Const. N. M. art 4, § 30. It also contained a provision that the salaries of officers could be neither increased nor diminished during their term of office as ours does. Article 4, § 27. The court said:

"In our state Constitution salaries provided for certain state officers, the Governor, secretary of state, auditor, and treasurer, are temporarily fixed 'until otherwise provided by law,' with the rule—repeated in almost every instance where salaries are mentioned—that such salaries shall

not be increased or diminished during the period
for which such officers were elected or appointed,
and, in addition to this, there is a general rule
prescribed that no law shall increase or diminish
the salary of any public officer after his election
or appointment. This was intended to secure of-
ficial independence, and to prevent the Legisla-
ture from being assailed by the demands of im-
portunate officials, to the detriment of public
business. The stability and permanence of the
salaries of public officials were guaranteed by the
Constitution, after once fixed, secure during the
official term from legislative control. * * * Al-
though some courts seem to distinguish between
the salaries fixed by the Constitution and those
fixed by an unrepealed statute, it seems that this
is a distinction more nice than wise. In either
case the people have given their assent to the
measure—in one method by their organic law,
which they have accepted, adopted, and ratified
by their votes; and in the other by their repre-
sentatives in the Legislature. The salaries are
to be fixed by law, and all such officers, whether
of the state, county, city, town, or school, 'shall
be paid fixed and definite salaries.' * * * The
law relating to the state examiner provides that
he 'shall receive' an annual salary of $2,000, and
the Constitution requires that his compensation
shall be fixed by law, and shall be a fixed and
definite salary, which shall not be increased or
diminished after his election or appointment. It
will be conceded that the second Legislature
could not have reduced his salary during his
term, either by a direct act for that purpose or
in an appropriation bill. It is equally clear that
they could not take it away directly or indirect-
ly. * * * It is true that no time of payment
of the salary of the examiner is provided in the
act, but I do not think this is material. It has
been the custom to pay state officers in this state

monthly, where there is no particular time prescribed by statute when they shall be paid, or at what intervals payments may be made on account of their salaries. This was conceded on argument, and is so alleged in the petition, which must be taken as true on demurrer. It can make no difference to the state that this method is pursued, and it may be left to the auditing department to fix such a rule of monthly payments, when there is no provision of the law to the contrary. There being no statutory or constitutional provision fixing the time of payment of certain state officers, including the examiner, the auditor and treasurer may very properly make a rule that the salaries of such officers may be paid monthly."

See, also, State ex rel. Davis v. Eggers, 29 Nev. 469, 91 Pac. 819, 16 L. R. A. (N. S.) 630.

We have recently had occasion to examine this same question in connection with another statute in the case of State ex rel. Fornoff v. Sargent, 18 N. M. 272, 136 Pac. 602, and we have no reason to depart from the holding in that case. In that case we held that a general law fixing the amount of salary of a public officer and prescribing its payment at particular periods amounted to a continuing appropriation. This case was approved in State ex rel. Jacobo Chaves v. Sargent, State Auditor, 18 N. M. 627, 139 Pac. 144. We therefore have concluded that House Bill No. 294, creating the office of state traveling auditor and fixing his salary, in connection with the former statutes mentioned, amounts to a continuing appropriation for such salary.

While many of the statutes under which decisions have been rendered are somewhat more specific than House Bill No. 294, in that they provide specifically that the salaries shall be paid either as other state salaries are paid, or prescribe that they be paid monthly or quarterly, as the case may be, still we regard this omission from our statute as immaterial. It is a curious fact in this connection that we have no statute in the state which provides for the

payment of salaries at any specific time. A practice of long standing has grown up to pay all officers monthly, unless either the Constitution or a statute specifically provides otherwise. This officer is upon the same footing as all other state officers not specifically provided for by law, and is entitled to his pay monthly according to this long course of practice and procedure.

The first case on this subject, and which may be considered a leading case, is the case of Thomas v. Owens, 4 Md. 189. It arose upon a constitutional provision which established a treasury department of the state, "consisting of a comptroller chosen by the qualified electors of the state at each election of the members of the House of Delegates, who shall receive an annual salary of $2,500; and of a treasurer to be appointed by the two houses of the Legislature at each session thereof on joint ballot, who shall receive an annual salary of $2,500." In commenting on the fact of this constitutional provision, and after pointing out the difference between an arbitrary and a constitutional government, and the reason why the people who contribute to public revenue should be consulted as to the expenditure of the same, as provided in the usual constitutional provision that no money shall be drawn from the treasury except in accordance with an appropriation made by law, it is said:

> "These being the purposes and objects of the clause, the question is: Have the people given their consent to the payment of the salary of the comptroller? That they have done so is palpably manifest. They have said he 'shall receive an annual salary of $2,500.' They have not merely said he may claim such a sum, but, emphatically, that he 'shall receive' it. It is impossible for human language to be less ambiguous or more positive. The people, in their organic law, which is paramount to all other law, have not only given their consent, but they have imperatively issued their commands that the particular officer 'shall receive' it. How is their will obeyed if it be within the power of the treasurer,

Dorman v. Sargent, Auditor, 20 N. M. 413.

or any one else, to withhold it from caprice, unfaithfulness to duty, or from mistaken judgment? To allow of such a power in that officer would be to put him above the Constitution, whose creature he is. It would be to invest him with authority to annul the sovereign will; in fact, to stop the wheels of government and reduce things into the wildest confusion. The Constitution has said the officer 'shall receive' his salary, and this fiat of the supreme will is not to be nullified by the mere ipse dixit of a mere ministerial officer; for such, and none other, is the treasurer.

"In assigning the powers of government to three different departments, the Constitution intended to secure to each its independency of action, and the more certainly and effectually to insure this it has ascertained and appropriated the salary they are severally to receive, and it has inhibited the Legislature from diminishing it. Were it not for such a provision, the whole government would exist only by the permission of the Legislature. It can only be carried on through the instrumentality of individuals, and their services can only be obtained by being paid for. The framers of the Constitution and the people who adopted it, aware of this, determined not to submit the durability of their work to the caprice, passion, or prejudice, which possibly might, at times of great excitement, triumphantly rule the action of the Legislature, and therefore wisely did the work themselves, by ingrafting in the organic law a provision for the protection of those who should be charged with its execution; in other words, they made the appropriation.

"An opposite interpretation would countenance this paradox, that a co-ordinate branch of the government could stop its whole machinery by refusing to pay the salaries of those upon

whom is devolved the discharge of the duties of the other branches; and this, too, when the Constitution expressly declares that these officers 'shall receive' their salaries, and that they 'shall not be diminished.' 'It would be giving to the Legislature a practical and real omnipotence with the same breath which professes to restrict their powers within narrow limits. It is prescribing limits and declaring that those limits may be passed at pleasure.' [Marbury v. Madison] 1 Cranch, 178 [2 L. Ed. 60].

"Now it is presumed it would not be contended by any one, however hazardous, that if the Legislature were to pass an act diminishing the salary of the governor, or of any other officer whose salary is fixed by the Constitution, that such an exercise of power would be rightful and constitutional. If it be not competent to the Legislature to take away a part, by what process of reasoning can it be maintained that they can take away the whole? And yet this is the extent to which the argument addressed to us goes. It seems to us to be but necessary to state the proposition to cause its instantaneous rejection."

It is true that in this case the court was considering a constitutional provision, but we see no reason for a distinction between a case where the salary of a constitutional officer is involved, and one where the salary of a statutory officer is involved. The statutory officer's duties may be as highly important as those of a constitutional officer. He must be in a position of independence. Once in office, he must be free to exercise its functions according to the best of his abilities, and in consonance with his conscience. If he be subservient to either the legislative, executive, or judicial departments of the government, he cannot be expected to render the services to the people which the functions of his office demand.

In the case at bar the state traveling auditor is in office: he must have a salary to maintain himself during his term of office; and the Legislature has declared that he

shall receive that salary. We think the same considera-
tions apply in this case with equal force as are set out in
the Maryland opinion supra. We are aware that in sev-
eral of the states the distinction has been drawn between a
constitutional and a statutory officer in this regard. We
can see no good reason for such a distinction, and must
decline to follow the same.

It is argued in opposition to this conclusion that the
legislative intent not to make such an appropriation in
House Bill No. 294 is manifested by an item in the appro-
priation bill, chapter 86 of the same session, whereby there
was appropriated money for the payment of the salaries
of the traveling auditor and bank examiner and his as-
sistants and clerks, with the proviso that they should not
become available in the event that House Bill No. 294
passed and became a law, and in the latter event the items
appropriated should become available for the payment of
the salaries and necessary expenses of the officers filling
the offices created by House Bill No. 294. It is objected
by the Attorney General that we have no right to take
judicial notice of this item in the appropriation bill for
the reason that it was vetoed by the Governor and never
became a law. But, assuming that we have the right to
notice this item, we do not believe, under all the circum-
stances attending this legislation, that it shows a legisla-
tive construction of House Bill No. 294 contrary to the
one which we have above declared. This item was in-
serted in the form in which it was, evidently for one of
two reasons, viz.: Either as a precautionary measure so
that in any event money should be available to pay some
traveling auditor, be he the old traveling auditor and bank
examiner or the new state traveling auditor, so that the
interests of the state might not be sacrificed; or it was
done as a means of restoring to the salary fund the money
which had been diverted to the traveling auditor and bank
examiner, who, in case House Bill No. 294 became a law,
would be out of office, and no longer entitled to any sal-
ary. The section went further, and made the items avail-
able for the payment of the state traveling auditor and
his assistants. In that sense it was a new appropriation,

but the substance and effect of the section was evidently
to restore to the salary fund for the uses the Legislature
desired the amount of money appropriated for the travel-
ing auditor and bank examiner. The passage of House
Bill No. 294 indicates a legislative determination to abol-
ish the office of state traveling auditor and to transfer to
the latter all of the powers and duties theretofore exer-
cised by the former. If they should fail in this purpose,
the Legislature did not wish to see the state left without
a traveling auditor, and therefore made the appropriation
mentioned in this section. Having succeeded in ousting
the old traveling auditor and bank examiner, and creat-
ing the office of state traveling auditor, and desiring to
provide for either contingency, they inserted the provision
that the money appropriated to the traveling auditor and
bank examiner should be restored to the treasury.

It clearly appears from what has been heretofore said
that the plaintiff has no cause of action for an injunction,
and the judgment of the court below will be affirmed; and
it is so ordered.

HANNA, J., concurs.

ROBERTS, C. J. (concurring specially).—Without re-
sorting to the prior statutes quoted and referred to in the
main opinion, I am satisfied that the language of House
Bill No. 294 amounted to a continuing appropriation of
the amounts therein named as salaries for these officials.
I do not believe the court can look to the vetoed items in
the appropriation bill as an aid in construing House Bill
No. 294. It could be said with as much logic that the
Governor vetoed these items because he was of the opin-
ion that provision had already been made for the pay-
ment of the salaries of these officers as it could be that
the two houses of the Legislature attempted to make pro-
vision therefor in such method because the act did not
appropriate the money.

Therefore I concur in affirming the judgment of the
lower court.