[No. 371.  Decided November 14, 1891.]

THE STATE OF WASHINGTON, *on the Relation of the Post-
Intelligencer Publishing Company,* v. A. A. LINDSLEY,
*State Treasurer, Respondent.*

STATE  AUDITOR'S  WARRANTS—APPROPRIATIONS—UNIVERSITY  COM-
MISSIONERS.

Under the constitutional provision (art. 8, § 4), forbidding the
payment of money out of the treasury, except in pursuance of an
appropriation by law, the state treasurer may, on that ground, law-
fully question the legality of any warrant issued by the state auditor.

Although the act providing for the organization of the board of
university land and building commissioners requires the treasurer
to keep a separate and permanent fund, to be known as the "uni-
versity fund," into which is to be paid all moneys received from the
sale of university lands, and all appropriations made by the state
for the support and maintenance of the university, and all other
moneys paid or received for the use of said university from other

sources, the treasurer is not authorized to pay warrants drawn by the auditor upon bills certified by the board of land and building commissioners out of moneys in said fund appropriated for the maintenance of the university, and which the regents thereof are empowered to expend.

*Original Application for Mandamus.*

*Arthur, Lindsay & King,* for petitioner.

*W. C. Jones,* Attorney General, for respondent.

The opinion of the court was delivered by

STILES, J.—This is an application for an alternative writ of *mandamus,* directed to the respondent as treasurer of the State of Washington, and requiring him to pay the amount of a certain warrant drawn by the auditor in the relator's favor, or if there be not sufficient funds in his hands to pay the warrant, to indorse thereon a statement that the same has been presented to him for payment, and has not been paid for want of funds, or show cause, etc.    The warrant is dated subsequently to September 24, 1891, is for the sum of $42, is numbered 68 of warrants drawn upon the university fund, and was issued to the relator for services performed at the instance of the board of university land and building commissioners, in the publication of a notice inviting bids from contractors in connection with the proposed erection of a university building.    The petition sets out the organization of the board in accordance with the requirements of the act of March 7, 1891 (Acts, p. 229), and shows that in pursuance of the requirements of § 9 of that act the notice in question was published by the relator in its newspaper, and that after the publication its account therefor was duly certified by the board to the auditor, who duly audited and approved the account, and issued his warrant therefor.    It is conceded that it was the treasurer's duty either to pay the amount of the warrant, or if he had not funds therefor, to indorse it as demanded, unless he is at

liberty to dispute the legality of its issue, and on that ground refuse to recognize it in any manner. This application was made upon notice to the respondent, who presents as his reasons for his refusal either to pay or to indorse the warrant, that the treasurer may dispute the legality of a warrant, and that the warrant in question was illegally issued.

I. No money can be paid out of the treasury except in pursuance of an appropriation by law. Const. art. 8, § 4. The treasurer is required to disburse public money only upon warrants drawn upon him by the State auditor. Acts 1890, p. 642, § 1. If the treasurer shall willfully refuse to pay any warrant lawfully drawn upon him he is subject to certain penalties. Same act, § 7. The auditor is prohibited from drawing any warrant unless there is a law authorizing the issue of the same. Acts 1890, p. 637, § 6. Under these provisions of the constitution and of the statutes it would seem clear that the treasurer would be justified in paying no warrant unless there was an appropriation made by law to meet it, and that any warrant issued without a previous appropriation would be unlawful, since a warrant is merely an order for the present payment of money out of the treasury. The treasurer, therefore, being in a position where he is as well qualified as the auditor to say whether or not there is an appropriation, may lawfully question the legality of any warrant on that ground.

II. The remaining question in this case, then, is whether or not there is an appropriation made by law to meet the warrant before us. "Appropriation," as applicable to the general fund in the treasury, is defined to be an authority from the legislature, given at the proper time, and in legal form, to the proper officer, to supply sums of money out of that which may be in the treasury in a given year to specified objects or demands against the state. *Ristine v. State,* 20 Ind. 338; 1 Amer. & Eng. Enc. Law, 639*d*, note

7; *Stratton v. Green,* 45 Cal. 149. The case of *Ristine v. State, supra,* arose upon a demand made by bond-holding creditors of the state of Indiana upon the auditor of that state for a warrant for interest on the public debt, contracted under a statute requiring the treasurer to pay the interest upon warrants of the auditor. The constitution of Indiana pledged all of the revenues of the state, after the payment of the ordinary expenses of government, to the payment—(1) Of the interest; and (2) of the principal of the public debt. But article 10, § 3, of that constitution prescribed:

"No money shall be drawn from the treasury but in pursuance of appropriations made by law."

Held that, in the absence of an act of appropriation by the legislature designating a fund for the payment of interest, the auditor could not be required to issue his warrant even for such a purpose.

Such being the definition of an appropriation, we next turn to the act providing for the organization of the board of university land and building commissioners, and find therein no appropriation whatever. We do find, however, that by the seventh section of that act the treasurer is required to keep a separate and permanent fund, to be known as the "university fund," into which is to be paid all moneys received from the sale of university lands, and all appropriations made by the state for the support and maintenance of the university, and all other moneys paid or received for the use of said university from other sources. And we also find in the general appropriation bill for the years 1891–92 the sum of $12,500 per year appropriated for the maintenance of the state university, which sum, under section 7, above mentioned, was to be paid into the university fund.

The relator maintains that its warrant is payable out of the appropriation for maintenance of the university in 1891, which is conceded not to have been yet exhausted. The

act in question is entitled " An act providing for the estab-
lishment, location, maintenance and support of the Univer-
sity of Washington," but the real purpose of the law seems
to have been to provide a commission whose duty it would
be to gather together the property held by the State for
university purposes, or to which it is entitled for such pur-
poses, to sell certain lands, to re-locate the university upon
school land section 16, township 25 north, range 4 east,
and to erect upon the new location "a university building
of such dimensions as may be suited to the wants of the
state, and of such other buildings as may be necessary for
the use of the officers, professors, students and employes
of said university." No limit whatever is set to the amount
of expenditure which may be incurred for these purposes,
and it is fair to say that the sum of $25,000 would not
be a beginning for the scheme here proposed. The act
does not pretend to give the board established by it any
voice in the control or management of the university as it
is now constituted, or as it will be when it is removed to
its new location. On the contrary, the act itself recognizes
the board of regents constituted by the act of March 27,
1890 (page 395), and by reference to the latter act we find
the entire administration of the institution vested and con-
tinuing in that board. It also appears that under the act
of 1890 the regents have as sources of revenue only tuition
fees and the annual appropriation made by the legislature,
and that they are prohibited from incurring any expense
beyond their annual income. Now, there was no other
university appropriation for the years 1891–92; therefore,
if the board of land and building commissioners may draw
upon the appropriation for maintenance of the university
for their purposes, the regents would very quickly be left
without any funds whatever, and, as they can now create
no debt, the institution must soon stop its invaluable work.
Did the legislature contemplate such a result? We cannot

9—3 WASH.

reach that conclusion.  It seems entirely probable that it was expected that under the provisions of the act the present site in the city of Seattle would be sold at an early date for a large sum, and that the money thus realized would be at the disposal of the commissioners for building and other purposes; but there was no intention that the moderate annual sum set apart for "maintenance" would be diverted to any other object.  In this conclusion we are further strengthened by the final clause of the tenth section of the act, which makes it the duty of the treasurer to pay all warrants drawn by the auditor upon bills certified by the board of land and building commissioners "out of any money in the university fund" "not otherwise appropriated."  Clearly the sum set apart for the maintenance of the university is "otherwise appropriated," although it is a part of the fund known in the treasurer's books as the "university fund."  There being no appropriation upon which the relator's warrant could be drawn, it follows that the alternative writ must be refused.  But before concluding this opinion we deem it proper to guard its future construction by the statement that it is not our intention to rule by any inference that the auditor might not examine and approve an account against the state (not issuing a warrant therefor) for the expenses of one of its public institutions of necessity or charity existing under general laws, or of its governmental offices, where no appropriation has been made, or where, by reason of unforeseen circumstances, the appropriation made had been exhausted.

The alternative writ is denied.

Anders, C. J., and Dunbar, Hoyt and Scott, JJ., concur.