State *ex rel v.* King.

STATE EX REL *v.* KING.

*(Nashville.* February 8, 1902.)

1. STATE TREASURY. *Appropriation of public moneys, what sufficient.*

Appropriation of public moneys for the payment of the salary of Shop and Factory Inspector out of the State Treasury is made by a provision in the statute relating to his office; "that the salary of said Inspector shall be twelve hundred dollars per annum, payable monthly, on warrant of Comptroller, as other salaries are paid." (*Post, pp. 273, 274-281.*)

Act construed: Acts 1901, Ch. 67.

2. SAME. *Same.*

And said provision constitutes an appropriation of public moneys for the purpose stated within the meaning of the constitutional provision that "no money shall be drawn from the treasury but in consequence of appropriations made by law," etc. (*Post, pp. 274-281.*)

Constitution construed: Art. 2, Sec. 24.

Acts construed: Acts 1901, Ch. 67.

3. SAME. *Same.*

And the appropriation thus made is not forbidden or annulled by the usual provision in general appropriation acts, that "the Comptroller is hereby expressly forbidden to draw his warrant on the treasury for any amount over and above the amount appropriated for any particular purpose, and he is also forbidden to draw his warrant for any purpose for which an appropriation has not been made, either in this Act or by law." Such appropriation is made "by law," and excepted out of the above provision. (*Post, p. 275.*)

Acts construed: Acts 1901, Ch. 67.

4. SAME. *Same.*

And the payment of said salary is not forbidden by the statutory provision that "no money shall be paid out of the public treasury unless the law or laws under which the same may be

State *ex rel v.* King.

claimed, or demanded, shall expressly direct and order that it shall be paid out of the public treasury," etc. (*Post, pp. 273-281.*) Code construed: § 287 (S.); § 268 (M. & V.); § 235 (T. & S.)

FROM DAVIDSON.

Appeal in error from the Circuit Court of Davidson County. JOHN W. CHILDRESS, J.

E. A. PRICE and K. T. McCONNICO for Relator.

ATTORNEY GENERAL PICKLE for King.

McALISTER, J. The relator, Noonan, as Shop and Factory Inspector of the State of Tennessee, filed the petition herein for the writ of mandamus, to compel the Comptroller to issue his warrant on the State Treasurer for the payment of his (Noonan's) salary. The Comptroller demurred to the petition and alternative writ upon the ground that no appropriation had been made by law for the purpose of paying relator's salary, and he was, therefore, without authority to issue the warrant. The demurrer was overruled, and the Comptroller, refusing to make further defense, a peremptory writ was ordered and final judgment pronounced against him. Thereupon the Comptroller appealed and has assigned errors. The

main inquiry upon the record is whether any appropriation has been made by law for the payment of this salary out of the public treasury. The Constitution, Art. II., Sec. 24, provides, viz.: "No money shall be drawn from the treasury but in consequence of appropriations made by law, and an accurate statement of the receipts and expenditures of the public money shall be attached to and published with the laws at the rise of each stated session of the General Assembly." Shannon's Code, § 287, provides, viz.: "No money shall be paid out of the public treasury unless the law or laws under which the same may be claimed, or demanded, shall expressly direct and order that it shall be paid out of the public treasury, and unless the warrant shows the name of the person in whose favor it is drawn, and the nature of the claim upon which it is founded, and the statute or authority under which it is issued."

It is insisted that the salary of the Shop and Factory Inspector was not included in the general appropriation bill made by the Legislature of 1901, and, further, that the Act of 1899, creating the office, fails to provide for its payment out of the public treasury.

The Act of 1901, amending the Act of 1899, which created the office, provides, viz.: "That the salary of said Inspector shall be twelve hundred dollars per annum, payable monthly, on warrant of

Comptroller, as other salaries are paid." The precise objection made to this act is that it fails to provide that this salary shall be paid out of the public treasury, but simply fixes the amount and manner of payment.

But the principal question submitted for our determination is whether the language of the Act of 1901, fixing this salary, and providing for its payment, amount to an appropriation by law within the meaning of Art. II., Sec. 24, of the Constitution, which declares that no money shall be drawn from the treasury but in consequence of appropriations made by law. The question, when otherwise formulated, is, must all payments from the public treasury be made in consequence of general appropriation bills, and is this the only mode of appropriating money by law in the sense of the Constitution. It may be remarked that this provision originated in the Constitution of 1796, and was readopted by the Convention of 1834, with the addition, "and an accurate statement of the receipts and expenditures of the public money shall be attached to and published with the laws at the rise of each stated session of the General Assembly." This provision, as amended, was then incorporated in the Constitution of 1870. It is matter of history that general appropriation bills, while commendable in practice, are of comparatively modern origin. So far as we have been able to discover, the Acts of 1879 furnish

the first precedent for a general appropriation bill. Anterior to that time, through a long series of years, such specific direction for the payment of money out of the State treasury was not supposed to be necessary in any case where the particular claim was fixed by a special statute. No general appropriation bill was ever passed prior to 1879.

It has been erroneously supposed the general appropriation bills of 1899 and 1901 contain express inhibitions against the payment of any money out of the State treasury unless the nature and amount of the claim is specifically included therein. The provision referred to in the general appropriation bills of 1899 and 1901 is contained in the first section, viz.: "The Comptroller is hereby expressly forbidden to draw his warrant on the treasury for any amount over and above the amount appropriated for any particular purpose, and *he is also forbidden to draw his warrant for any amount for any purpose for which an appropriation has not been made, either in this Act or by law.*" This very act clearly recognizes the right of the Comptroller to pay claims, salaries, and other expenses, which have already, or may thereafter, be fixed by law.

The only limitation imposed by the Constitution upon the payment of money out of the public treasury is, that it must be in consequence of appropriations made by law. So that the main in-

quiry in this case is, whether the provision in the Act of 1901, "that the salary of said Inspector shall be $1,200 per annum, payable monthly on warrant of Comptroller, as other salaries are paid," amounts to "an appropriation made by law."

This question, while of first impression in this State, so far as we are advised, has frequently arisen in other jurisdictions, and has been resolved in the affirmative.

In the Am. & Eng. Ency. Law, Vol. 2 (2d ed.), p. 515, we find the following statement, viz.: "In a number of the United States there are constitutional provisions to the effect that no money shall be drawn from the treasury, but in pursuance of appropriations made by law. Appropriations as applicable to the general fund in the treasury is defined to be an authority from the Legislature given at the proper time and in legal form to the proper officers to apply sums of money, out of that which may be in the treasury in a given year, to specified objects or demands against the State."

In *Campbell* v. *State,* 115 Indiana, 591, the Court, among other things, said, viz.: "It is true, as claimed, that no money can be rightfully drawn from the treasury except in pursuance of an appropriation made by law, but such an appropriation may be made impliedly as well as expressly, and in general as well as in specific

State *ex rel v.* King.

terms. The use of technical words in a statute making an appropriation is not necessary. There may be an appropriation of public moneys to a given purpose without in any manner designating the act as an appropriation. It may be said generally that a direction to the proper officer to pay money out of the treasury on a given claim, or for a given object, may by implication of law be held to be an appropriation of a sufficient amount of money to make the requisite payments." See, also, *Henderson* v. *Board,* 13 L. R. A., 169.

The Constitution of Arkansas provides that no money shall be paid out of the treasury until the same shall have been appropriated by law. In *Clayton* v. *Berry,* 27 Arkansas, 131, the Court said, viz.: "The expression 'appropriated by law,' means the act of the legislature in setting apart, or assigning to a particular use, a certain sum of money to be used in the payment of debts or dues from the State to its creditors." In *State of Wyoming* v. *Henderson,* 4 Wyo., 272; S. C., 24 L. R. A., 266, it appeared that the Constitution of Wyoming provided, among other things, viz.: 'Art. 3, Sec. 35: No money shall be paid out of the State treasury except upon appropriations by law, and on warrant drawn by the proper officer.' A statute of that State, creating the office of State Examiner, provided, viz.: 'Sec. 27. The State Examiner shall re-

ceive an annual salary of $2,000, and a contingent fund of not exceeding $1,400, for the incidental expenses of his office, which shall be paid by the Treasurer of the State, in the same manner as other salaries and expenses of State officers are paid.' "

It will be observed there is great similarity between that statute and the one under review, which provides "That the salary of said Inspector shall be twelve hundred dollars per annum, payable monthly on warrant of Comptroller, as other salaries are paid."

The Court, in dealing with the Wyoming statute, said, viz.:. "The limitation in the Federal Constitution is that 'no money shall be drawn from the treasury but in consequence of appropriations made by law.' The object of this limitation and that contained in the constitutions of the several States of similar import, is to secure to the legislative department the exclusive power of deciding how, when, and for what purposes the public funds shall be applied in carrying on the government. 2 Ops. Atty. Gen., W. S., 670. It had its origin in the British Parliament, when the people of Great Britain, to provide against abuse by the King and his officers of the discretionary . power with which they were vested, demanded that the public funds should not be drawn from the . treasury except in accordance with express appropriations therefor made by Par-

liament. Hallam Const. Hist., 55. This was the fruit of the English revolution, which sent the king to Versailles and changed the succession to the throne. This wise restraint has become a part of the fundamental law of nearly every State in the Union. It has been well said these provisions were obviously inserted to prevent the expenditure of the people's treasure without their consent, either as expressed by themselves in the organic law, or by their representatives in constitutional acts of legislation." . . . In the case of *Humbert* v. *Dunn,* 84 Cal., 57, the relator was a member of an examining commission on rivers and harbors, and asked for a writ of mandate commanding the Comptroller of the State to draw a warrant in favor of relator for two hundred dollars for salary as a member of said commission for the month of November, 1889, the same having been presented to the State Board of Examiners, and by them audited, allowed, and approved, and ordered paid out of any money in the State treasury not otherwise appropriated; the Comptroller having refused to draw his warrant therefor.

The Court says that the usual formula, "There is hereby appropriated the sum of ———— dollars out of any moneys in the State treasury not otherwise appropriated for the payment of salaries," etc., is not found in the Act, but the intention of the Legislature was clearly manifested

in the language used, which was that 'each member shall receive a salary of two thousand four hundred dollars per annum, payable monthly,' and that it was to be paid out of any money in the State treasury not otherwise appropriated; and it held that there was nothing in such language indicating any intention to postpone the payment of the salaries of the commission until the next session of the Legislature. In this case, as in the case of *People* v. *Brooks,* 16 Cal., 11, it was held that it is not essential to the validity of an appropriation that the usual formula, there is hereby appropriated the sum," etc., or any of them, should be used if the Legislature fixed the amount of the claim, and designated the payment out of a certain fund. *Ristine* v. *State,* 20 Ind., 328: "The Indiana Legislature failed to make any appropriation for the fiscal year ending October 31, 1888. The Attorney General of that State held that a general act providing that the officers named therein should be entitled to receive and charge for their services, as such officers, the salaries, fees, and compensation allowed, and set out in the act, and this and other statutes, either expressly appropriated the sums named, or provided that the officer shall receive the sum named as his salary, *thereby creating an appropriation by force of the language used,* according to the rules laid down in the opinion deduced from the decisions of

the court. Rep. & Ops. Atty. Gen., Ind., 1888, p. 155. These views of the law departments of these States seem to have been accepted without question and without a struggle in the courts."

The Court, in speaking of the statute under consideration in the case before · them, used this language, in addition to the above:

"It is clear that the act creating the office of State Examiner does in Sec. 27 thereof make an appropriation at least for the salary of such officer; . . . the appropriation is exact as to the amount of money, the person to whom it is to be paid, when it is to be paid—that is for each year—and that the Treasurer shall pay it. The direction to the Treasurer to pay the amount of the annual salary of the Examiner to that officer may be held by implication to be an appropriation of a sufficient amount of money to make the required payments, etc."

We fully concur with the reasoning and conclusions of the Court in these cases, and hold that the statute having fixed the salary of the Shop and Factory Inspector, and directed that it should be paid monthly on warrant of the Comptroller, as other salaries are paid, this is an appropriation made by law, payable out of the public treasury. The Circuit Judge so held, and we affirm his judgment.