(May 12, 1913.)

## FRED R. REED, Plaintiff, v. FRED L. HUSTON, State Auditor, Defendant.

[132 Pac. 109.]

IMMIGRATION COMMISSIONER — SALARY — APPROPRIATION — WHAT CONSTITUTES APPROPRIATION.

1. Section 1, article 13, of the state constitution provides that, "There shall be established a bureau of immigration, labor and statistics, which shall be under the charge of a commissioner of immigration, labor and statistics, who shall be appointed by the governor,

by and with the consent of the senate.   The commissioner shall hold his office for two years, and until his successor shall have been appointed and qualified, unless sooner removed."

2. Sec. 1418, Rev. Codes, as amended in 1911 (1911 Sess. Laws, p. 564), provides that "It shall be the duty of the Governor, by and with the consent of the senate, to appoint a competent person as Commissioner of Immigration, Labor and Statistics, who shall have charge of said bureau, and who shall hold his office for the term provided in said Article 13 of the constitution.   He shall receive a salary of $2,400 a year," etc., and sec. 276 of the Rev. Codes provides that "The salary of all state and district officers, whose salaries are paid from the state treasury, shall be paid quarterly on the second Monday of January, April, July and October of each year out of any money in the treasury not otherwise appropriated."

3.   Under the provisions of sec. 1, art. 13, of the constitution, creating the office of immigration commissioner, and sec. 1418 of the Rev. Codes, as amended by the 1911 Session (1911 Sess. Laws, p. 564), prescribing the salary of immigration commissioner, and sec. 276 of the Rev. Codes, providing that the salary of a state officer shall be paid "out of any money in the treasury not otherwise appropriated," *held*, that these provisions of law constitute an appropriation within the purview and meaning of sec. 13, art. 7, of the constitution, which provides that "no money shall be drawn from the treasury, but in pursuance of the appropriations made by law."   It is also further held that under the foregoing provisions of law it was not necessary for the last session of the legislature to make a specific appropriation in the general appropriation bill for the office of commissioner of immigration, labor and statistics, in order to enable the commissioner to draw his salary as provided by law.

4.   The legislative intent that controls in the construction of statutes has reference to the legislature which passed a given act, and that intent is indicated by the *action* of the legislature and not by their *failure to act*.   Legislative intent is not gathered from the failure of a legislature to pass any particular act or legislation; the intent is gathered from the things they do.

Original action for a writ of mandate.   Writ granted.

E. G. Davis, for Petitioner.

The constitution having provided by law for a certain office and the legislature having fixed the salary thereof and having provided the manner of its payment, no further specific appropriation of funds is necessary to pay the salary so fixed by law.

It is not necessary for the legislature to appropriate specifically for the payment of the salary of such office at each recurring session of the legislature; the law creating the office, fixing the salary and designating the manner of its payment will be construed as a continuing appropriation for this purpose.

The legislature in enacting chapter 178, Laws of 1913, specifically recognized the salary of the state commissioner of immigration, labor and statistics and authorized its payment, notwithstanding the fact that the same was not included in the general appropriation. (*State v. Hickman*, 9 Mont. 370, 23 Pac. 740, 8 L. R. A. 403; *State v. Burdick*, 4 Wyo. 272, 33 Pac. 125, 24 L. R. A. 266; *State v. Eggers* (Nev.), 128 Pac. 986; *State v. King*, 108 Tenn. 271, 67 S. W. 812; *Hegwer v. Goodykoontz*, 22 Colo. 507, 45 Pac. 414; *Reynolds v. Taylor*, 43 Ala. 420; *Thomas v. Owens*, 4 Md. 189.)

"To an appropriation within the meaning of the constitution nothing more is requisite than a designation of the amount and the fund out of which it shall be paid." (*Proll v. Dunn*, 80 Cal. 220, 22 Pac. 143; *Humbert v. Dunn*, 84 Cal. 57, 24 Pac. 111; *McCauley v. Brooks*, 16 Cal. 11; *State v. Weston*, 4 Neb. 216; *State v. Moore*, 50 Neb. 88, 61 Am. St. 538, 69 N. W. 373; *Shattuck v. Kincaid*, 31 Or. 379, 49 Pac. 758.)

J. H. Peterson, Attorney General, J. J. Guheen and T. C. Coffin, Assistants, for Respondent.

The distinction between the case of *Thomas v. Owens* and the case at bar is that in the Owens case the constitution fixed the salary, and provided that the controller *should receive it*, while in the case at bar, the constitution did nothing more than create the office, and the provision as to salary is dependent entirely upon statute. See, also, *Myers v. English*, 9 Cal. 341, which laid down the principle that there was no distinction to be made between a statutory and a constitutional provision fixing a salary, and that they were susceptible of precisely the same interpretation.

We have, then, at the outset, two equally well-considered cases, the one holding that a constitutional provision fixing salaries is an appropriation, and the other that a statute fixing a salary in pursuance of the constitutional mandate is not an appropriation.

Other courts have had occasion to construe these two cases together on questions similar to the one here raised. (*State v. Hickman,* 9 Mont. 370, 23 Pac. 740, 8 L. R. A. 403.)

A case very similar to the California case arose in Oregon in 1897, viz., *Shattuck v. Kincaid,* 31 Or. 379, 49 Pac. 758.

As bearing out the theory that the legislature did not intend an appropriation, we also cite *Menefee v. Askew,* 25 Okl. 623, 107 Pac. 159, 27 L. R. A., N. S., 537, and *Pickle v. Finley,* 91 Tex. 484, 44 S. W. 480; *State v. Weston,* 4 Neb. 216; *State v. Weston,* 6 Neb. 16, and *United States v. Fisher,* 109 U. S. 143, 3 Sup. Ct. 154, 27 L. ed. 885.

AILSHIE, C. J.—This is an original action for a writ of mandate.

The question involved is the right of the plaintiff to have a state warrant issued to him for the payment of his salary as state immigration commissioner. The state constitution (sec. 1, art. 13) provides that "There shall be established a bureau of immigration, labor and statistics, which shall be under the charge of a commissioner of immigration, labor and statistics, who shall be appointed by the governor, by and with the consent of the senate. The commissioner shall hold his office for two years, and until his successor shall have been appointed and qualified, unless sooner removed. The commissioner shall collect information upon the subject of labor, its relation to capital, the hours of labor and the earnings of laboring men and women, and the means of promoting their material, social, intellectual and moral prosperity. The commissioner shall annually make a report in writing to the governor of the state of the information collected and collated by him, and containing such recommendations as he may deem calculated to promote the efficiency of the bureau." In pursuance of the terms of this provision of the constitu-

tion, the legislature enacted sec. 1418 of the Rev. Codes, as amended in 1911 (1911 Sess. Laws, p. 564), which provides in part as follows:

"It shall be the duty of the governor, by and with the consent of the senate, to appoint a competent person as commissioner of immigration, labor and statistics, who shall have charge of said bureau, and who shall hold his office for the term provided in said article 13 of the constitution. He shall receive a salary of twenty-four hundred dollars a year, and such additional sum for general expenses, including his traveling expenses, printing, clerical hire and other actual and necessary expenses of his office, as the legislature shall authorize and appropriate, to be paid as are the salary and expenses of other state officers."

It will be observed, therefore, that the constitution does not fix the salary of the commissioner of immigration, labor and statistics, but that the legislature has, on the other hand, by sec. 1418, *supra,* fixed the salary at $2,400 per annum. It has been the custom of the legislature at every session since the office of immigration commissioner was established to incorporate in the general appropriation bill an appropriation for salaries and office expenses in the department of the commissioner of immigration. The last session of the legislature, however, failed to make any appropriation for that department, and so the question is presented in this case as to whether there is any appropriation for the salary of the immigration commissioner against which the auditor can draw his warrant. The last session of the legislature did not repeal sec. 1418 of the Rev. Codes, as amended in 1911 (1911 Sess. Laws, p. 564), which fixes the salary of the commissioner, and so that statute remains in force and effect. The office, however, was created by the constitution (sec. 1, art. 13). All that remained for the legislature to do was to prescribe the salary and the compensation of the commissioner, and the duties to be discharged by him and make such appropriation for the office as they deemed necessary. The legislature might, however, at any time render the constitutional provision creating the office ineffective and inoperative by re-

pealing the statute fixing the salary and prescribing the duties of the office. It stands, however, as an admitted fact in the case, that the office is a constitutional office and that it is occupied by an appointee of the governor and that the statute fixes the salary of the official at $2,400 per annum. Sec. 13, art. 7, of the constitution provides that "no money shall be drawn from the treasury, but in pursuance of the appropriations made by law." Sec. 276 of the Rev. Codes provides that, "The salaries of all state and district officers, whose salaries are paid from the state treasury, shall be paid quarterly, on the second Monday of January, April, July and October, of each year, out of any money in the treasury not otherwise appropriated." Sec. 111 of the Rev. Codes provides that in all cases of salaries ascertained and allowed by law, the auditor must draw warrants upon the treasury for the amount, provided that the whole amount drawn and paid for any purpose shall never exceed the amount appropriated for that purpose.

From the foregoing provisions it will be seen that we have, first, a constitutional office; second, the salary fixed for that office by the legislature; and, third, a statute directing the payment of all salaries of state and district officers "out of any money in the treasury not otherwise appropriated"; and, lastly, a provision requiring the auditor to draw his warrant for salaries fixed by law against any unexhausted appropriation made therefor. This would seem to be as clearly an appropriation for salaries of state and district officers as could well be made.

This court had a somewhat similar question under consideration in *Gilbert v. Moody*, 3 Ida. 3, 25 Pac. 1092, in a case where the statute fixed the salary of a court reporter at $2,000 per annum and directed the controller to draw his warrant to make payments on the salary of such reporter as the same became due, and directed the treasurer "to pay the same out of any money in the treasury not otherwise appropriated," and the court held that the statute fixing the salary of the reporter also made a definite appropriation for the payment thereof. In passing on the question this court

said: "The act in question makes the appropriation; it fixes the compensation, the time of payment, and authorizes the controller to draw his warrant to pay the same when due. No further appropriation is required." It seems to us that the foregoing case is directly in point here, and that the same may be said of the statutes in force with reference to the commissioner of immigration, labor and statistics. The compensation to be received by the officer is fixed by law and this does not expire by any time limitation, while, on the other hand, the statute, sec. 276, *supra*, provides a continuing appropriation for the payment of the salary of such an officer. This salary is to be paid each year "out of any money in the treasury not otherwise appropriated." This expression "not otherwise appropriated" clearly means money in the treasury that is not, at the time the payment of a salary becomes due, appropriated by an act of the legislature to some other special or particular purpose. In other words, any money that may be in the treasury at the time a salary becomes due, which is not at the time appropriated by the constitution or act of the legislature to some other use or purpose, is clearly "not otherwise appropriated," and is therefore available and "appropriated" by this act to the payment of the salaries designated and enumerated in sec. 276, Rev. Codes. (*Humbert v. Dunn*, 84 Cal. 57, 24 Pac. 111.)

This construction and view of the law is supported by *McCauley v. Brooks*, 16 Cal. 11; *Proll v. Dunn*, 80 Cal. 220, 22 Pac. 143; *State v. Weston*, 4 Neb. 216; *State v. Hickman*, 9 Mont. 370, 23 Pac. 740, 8 L. R. A. 403; *State v. Burdick*, 4 Wyo. 272, 33 Pac. 125, 24 L. R. A. 266; *State v. Eggers* (Nev.), 128 Pac. 986; *State v. King*, 108 Tenn. 271, 67 S. W. 812; *Hegwer v. Goodykoontz*, 22 Colo. 507, 45 Pac. 414; *Reynolds v. Taylor*, 43 Ala. 420; *Leddy v. Cornell*, 52 Colo. 189, 120 Pac. 153, 38 L. R. A., N. S., 918.

A contrary view seems to have been taken in the following cases: *Shattuck v. Kincaid*, 31 Or. 379, 49 Pac. 758; *Menefee v. Askew*, 25 Okl. 623, 107 Pac. 159, 27 L. R. A., N. S., 537; *Pickle v. Finley*, 91 Tex. 484, 44 S. W. 480; *United States v. Fisher*, 109 U. S. 143, 3 Sup. Ct. 154, 27 L. ed. 885.

The principle here involved has received consideration in the case of *Thomas v. Owens*, 4 Md. 189, and that case has become a leading case on the subject of what constitutes an appropriation within the usual constitutional provision found in the constitutions of the several states. *Thomas v. Owens* is in turn reviewed and considered at considerable length in *Myers v. English,* 9 Cal. 341, and the question of what constitutes a legislative appropriation is there again considered. Keeping in view the reasoning of the courts of the several states on this question and applying the reason of the rule to the provisions of our constitution and statute above set out, we have no doubt of the right of the plaintiff to have a salary warrant issued to him by the auditor when the same falls due, and to have it paid "out of any money in the treasury not otherwise appropriated."

There is one other matter to which we may properly refer as containing at least a slight indication of the view taken by the last legislature with reference to the continuing character of the appropriation for the salary of this officer. Sec. 2, chap. 178, approved March 13, 1913 (1913 Sess. Laws, 554), and known as the "Panama-Pacific International Exposition Act," provides that the "Commissioner of Immigration, Labor and Statistics is hereby constituted the executive officer" of "The Idaho State Commission to the Panama-Pacific International Exposition." Sec. 3 of the same act provides that "as compensation for his special duties, the executive commissioner may be paid a salary of $100 per month . . . . in addition to his salary as state commissioner of immigration, labor and statistics." The provisions of this act indicate that the legislature when passing it understood that the commissioner of immigration would receive his regular salary provided by law. As we view the matter, however, the intention of the legislature is not the controlling question in this case. The *legislative intent* that controls in the construction of statutes has reference to the legislature which passed a given act, and that intent is indicated by *the action* of the legislature and not by their *failure to act.* On account of a disagreement between the two branches of the

legislature, they might be unable to pass through both branches of that body an act carrying an appropriation for a particular department or office, and yet for the same reason they could not pass through both branches of the legislature a bill repealing a statute which creates an office or fixes the salary of a particular officer. In such a case the failure to make an appropriation for the office would be no more indicative of the legislative intent than the failure to repeal the salary statute would be indicative of the legislative intent. On the other hand, the *intent of the legislature which passed the salary statute* is clear and unmistakable, and stands as the last legislative expression on that subject, and represents the will of the people in that respect, and will continue to do so until a different expression is had in the form of an amendment or repeal by a subsequent legislature.

For the foregoing reasons the writ of mandate will issue directing the auditor to draw his warrant at the end of the quarter for the salary of plaintiff in conformity with the provision of sec. 276, Rev. Codes. No costs awarded in this case.

Sullivan and Stewart, JJ., concur.

---

(May 12, 1913.)

