RODNEY EIELSON ET AL. *v.* HENRY E. PARKER ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

Argued November 8, 1979—decision released February 5, 1980

*Louis Parley,* for the plaintiffs.

*Richard C. Robinson,* with whom was *Milton Sorokin,* for the defendants.

PETERS, J. This is a class action challenging the constitutionality of the state statute establishing a graduated salary system for the judges of the Superior Court. The plaintiffs, formerly judges of the Court of Common Pleas, were elevated to the Superior Court as part of the 1976 court reorganization act which transferred all trial jurisdiction to the Superior Court. They are seeking an order to compel the defendants Henry E. Parker as treasurer of the state of Connecticut and J. Edward Caldwell as comptroller of the state of Connecticut to pay them salaries which are equal in amount to those paid to other judges of the Superior Court. The case is here on facts stipulated by the parties and on an agreed statement of four questions of law that were reserved by the trial court for the consideration and advice of this court.

The stipulation of facts establishes the following for the purposes of this adjudication: The statute establishing the salaries for judges of the Superior Court, General Statutes § 51-47 as amended by Public Acts 1976, No. 76-436, §§ 10a and 35, and Public Acts 1978, No. 78-377, § 1[1] was enacted as part of the act which transferred all trial jurisdiction to the Superior Court and eliminated the lower courts. This act also expanded the number of judgeships on the Superior Court bench. The plaintiffs, all formerly judges of the Court of Common Pleas, were elevated to the Superior Court on July 1, 1978, to assume their new positions. Under the applicable statutes, judges who were sitting on the Superior Court as of June 30, 1978, will at least

---

[1] The statute was also amended by Public Acts 1977, No. 77-452, § 13, and No. 77-576, § 30, which in no way affect the outcome in this case.

initially receive higher salaries than those who commenced to serve on that court on or after July 1, 1978. The differences in salary are not based on differences either in competency or in responsibility in the performance of judicial duties. Nor are the salary differences based upon differences in experience except that the word experience excludes the fact that those Superior Court judges who are not members of the plaintiff class have all been Superior Court judges for a longer period of time than any member of the plaintiff class. The provision for salary differentials depending upon length of service as a judge of the Superior Court constitutes a change from prior Connecticut law. Under the pre-merger compensation system, judges who as members of the Court of Common Pleas had received salaries of $28,500 were entitled to the $34,500 salary of Superior Court judges immediately upon their appointment to that bench. By contrast, under the judicial salary statute as amended in 1976, the plaintiffs as newly appointed Superior Court judges will not receive the salary of "old" pre-merger Superior Court judges until they have completed five years' service on the Superior Court. During their first year as Superior Court judges, these plaintiffs' salaries were the same as those which they formerly were paid as judges of the Court of Common Pleas.

The questions of law which have been stipulated and reserved to this court for our consideration and advice are as follows: (1) Does § 51-47 of the General Statutes as amended by Public Acts 1976, No. 76-436 and Public Acts 1978, No. 78-377 violate the separation of powers provided for by articles second and fifth of the constitution of Connecticut

by establishing salary levels for those Superior Court judges who commenced to serve as Superior Court judges on or after July 1, 1978, that, at least initially, are below those established for those Superior Court judges who were serving as Superior Court judges on June 30, 1978? (2) Does § 51-47 of the General Statutes as amended by Public Acts 1976, No. 76-436 and Public Acts 1978, No. 78-377 violate the equal protection clauses of article first, § 20, of the constitution of Connecticut and of the fourteenth amendment to the United States constitution by establishing salary levels for those Superior Court judges who commenced to serve as Superior Court judges on or after July 1, 1978, that, at least initially, are below those established for those Superior Court judges who were serving as Superior Court judges on June 30, 1978? (3) If the answer to either of the above questions is in the affirmative, must all of the judges of the Superior Court receive the same salary? (4) If the answer to questions 1 or 2 is in the affirmative, does the Supreme Court or the Superior Court have power to order the defendants to pay salaries to Superior Court judges in the absence of any lawful statute authorizing the defendants to pay such salaries. As is clear from the formulation of these questions, we will not reach the latter two unless we decide one of the first two questions in the affirmative.

The statute whose constitutionality is at issue is General Statutes § 51-47 as amended by Public Acts 1976, No. 76-436, §§ 10a and 35, and Public Acts 1978, No. 78-377, § 1. The statute provides, in relevant part: "Sec. 51-47. Salaries of judges. Practice of law prohibited. The judges of the state-

maintained courts shall receive annually salaries as follows: . . . each judge of the superior court who was serving as a judge of the superior court on June 30, 1978, thirty-eight thousand five hundred dollars; each judge of the superior court who commences to serve as a superior court judge on or after July 1, 1978, shall receive in the year he first so serves in said superior court twenty-eight thousand five hundred dollars; each judge of the superior court who has completed one year of judicial service as a superior court judge computed from the first day of the month after twelve months of service, thirty-four thousand five hundred dollars; each judge of the superior court who has completed two years of judicial service as a superior court judge, computed from the first day of the month after twenty-four months of service, thirty-five thousand five hundred dollars; each judge of the superior court who has completed three years of judicial service as a superior court judge, computed from the first day of the month after thirty-six months of service, thirty-six thousand five hundred dollars; each judge of the superior court who has completed four years of judicial service as a superior court judge, computed from the first day of the month after forty-eight months of service, thirty-seven thousand five hundred dollars; and each judge of said court who has completed five years of judicial service as a superior court judge, computed from the first day of the month after sixty months of service, thirty-eight thousand five hundred dollars." Although the statute was again amended by Public Acts 1979, No. 79-608, § 1, the 1979 amendment does not affect the basic structure of § 51-47 but only alters the respective dollar amounts.

## I

The plaintiffs' argument that § 51-47 as amended violates the doctrine of separation of powers is based upon article second of the constitution of Connecticut. That article simply provides that: "The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another." The plaintiffs maintain that the legislature's enactment of a graduated salary system for Superior Court judges unconstitutionally encroaches upon functions exclusively vested by article fifth, § 1,[2] in the judicial department. We do not agree.

It is important at the outset to remember that the challenge of a statute on constitutional grounds always imposes a difficult burden on the challenger. We have consistently held that every statute is presumed to be constitutional and have required invalidity to be established beyond a reasonable doubt. *Engle* v. *Personnel Appeal Board,* 175 Conn. 127, 134, 394 A.2d 731 (1978); *State* v. *Darden,* 171 Conn. 677, 678, 372 A.2d 99 (1976); *State* v. *Warren,* 169 Conn. 207, 217, 363 A.2d 91 (1975); *Lublin* v. *Brown,* 168 Conn. 212, 219, 362 A.2d 769 (1975); *Wilson* v. *Connecticut Product Development Corporation,* 167 Conn. 111, 114, 355 A.2d 72 (1974); *Kellems* v. *Brown,* 163 Conn. 478, 486, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1973); *Adams* v. *Rubinow,* 157 Conn.

---

[2] Article fifth, § 1, of the constitution of Connecticut vests the judicial power of the state "in a supreme court, a superior court, and such lower courts as the general assembly shall, from time to time, ordain and establish."

150, 152–53, 251 A.2d 49 (1968); *Patterson* v. *Dempsey,* 152 Conn. 431, 444, 207 A.2d 739 (1965); *McGovern* v. *Mitchell,* 78 Conn. 536, 564, 63 A. 433 (1906); *Norwalk Street Ry. Co.'s Appeal,* 69 Conn. 576, 594, 37 A. 1080 (1897).

The plaintiffs place heavy reliance on the judicial gloss on article second that is contained in the well-known case of *McGovern* v. *Mitchell,* supra. Justice Hamersley there opined that it was incumbent upon the legislature to " 'enact laws establishing from time to time for all members of each court a certain, uniform, and adequate compensation.' " Id., 548. In determining what this language should be deemed to command, we must first place *McGovern* v. *Mitchell* in context.

The issue in *McGovern* v. *Mitchell* was the power of the legislature to provide raises for sitting judges when the constitution of Connecticut, article twenty-fourth of the amendments (now article eleventh, § 2) forbids the payment of extra compensation to a public officer during his term of office. As we have recently noted with approval, *McGovern* v. *Mitchell* held that this constitutional provision was designed only to forbid gratuitous grants of compensation and therefore did not preclude properly legislated salary increases. *Scalo* v. *Mandanici,* 179 Conn. 140, 149, 425 A.2d 1272 (1979). Justice Hamersley's discussion of the legislative power over salaries was a discussion in the service of validating what the legislature had done, and is therefore replete with references to legislative authority to set salaries; *McGovern* v. *Mitchell,* supra, 538, 553, 554, 561, 567; a proposition more consistent with the constitutionality than with the

unconstitutionality of the statute before us. In any case, he was addressing a different issue from the one we must resolve.

Whether or not Justice Hamersley's prefatory remarks that the legislature was obligated to fix salaries that were "certain, uniform, and adequate" are properly to be characterized as dictum, nothing in the principles he enunciated is inconsistent with the provisions of General Statutes § 51-47. Justice Hamersley's injunction that salaries be uniform is taken by the plaintiffs to mean that they must be equal. That surely is a misreading of what Justice Hamersley said and intended. Throughout his opinion, the object of his opprobrium is legislative conduct that is irregular, special, ad hominem; a budgetary counterpart would be a salary system in which each judge's compensation would be an independently determined line item. A law is uniform if it applies generally to all those within a designated class, if people similarly situated are treated alike. *Ex Parte Nowak,* 184 Cal. 701, 707–708, 195 P. 402 (1921); *State ex rel. Knox* v. *Speakes,* 144 Miss. 125, 153, 109 So. 129 (1926); Black's Law Dictionary 1700–1701 (4th Ed. Rev. 1968). Uniform does not mean identical; *Carr* v. *Amusement, Inc.,* 47 Wis. 2d 368, 372, 177 N.W.2d 388 (1970); or universal; *Watson* v. *Greely,* 67 Cal. App. 328, 343–44, 227 P. 664 (1924). Only if there is something improper in the legislative classification embodied in the provisions of § 51-47 could Justice Hamersley's strictures be said to apply. There is nothing inherently unconstitutional in a linkage between salary and length of service.

None of the cases in which we have held that the legislature had unconstitutionally encroached upon

the authority of the judicial department even remotely suggests that the legislature lacks power to determine a general salary system for state judges. "A statute can overstep constitutional bounds if it represents an effort by the legislature to exercise a power which lies exclusively under the control of the courts; *State* v. *Clemente,* 166 Conn. 501, 507, 510–11, 353 A.2d 723; *Heiberger* v. *Clark,* 148 Conn. 177, 169 A.2d 652; *State Bar Assn.* v. *Connecticut Bank & Trust Co.,* 145 Conn. 222, 140 A.2d 863; or if it establishes a significant interference with the orderly conduct of the Superior Court's judicial functions. *Adams* v. *Rubinow,* [157 Conn. 150, 160–61, 251 A.2d 49 (1968)]." *State* v. *Darden,* 171 Conn. 677, 679, 372 A.2d 99 (1976). A statute is not, however, constitutionally improper simply because it affects the judicial function, so long as it is an exercise of power assigned by the constitution to the legislature. *State* v. *Darden,* supra, 680–81. Legislative power necessarily encompasses the power "to appropriate funds to finance the operation of the state and its programs." *Bridgeport* v. *Agostinelli,* 163 Conn. 537, 544, 316 A.2d 371 (1972). In *Adams* v. *Rubinow,* supra, which contains an extensive description of the development of the doctrine of separation of powers in Connecticut constitutional history, this court stated expressly and without qualification that the legislative power vested in the general assembly has always encompassed, both before and after the constitution of 1818, the power "[to fix] the salaries of the judges." Id., 174. *Adams* v. *Rubinow,* in turn, is merely a modern restatement of the observation in *McGovern* v. *Mitchell,* supra, 554, that "[t]he power of regulating by law the compensation of public officers is inseparable from one of the broad-

est and most important fields of legislative power, namely, that of creating the whole machinery of government and providing for its administration."

The fact that our constitution contains no provision expressly conferring upon the general assembly the power to make appropriations is of no moment.[3] Such legislative power is readily inferrable from article fourth, § 22, concerning the duties of the state treasurer, who "shall receive all monies belonging to the state, and disburse the same only as he may be directed by law." Cases in other jurisdictions construing similar directives have consistently found such directives to require " 'an authority from the legislature, given at the proper time, and in legal form, to the proper officers, to apply sums of money out of that which may be in the treasury in a given year, to specified objects or demands against the state.' " *Shattuck* v. *Kincaid,* 31 Ore. 379, 386, 49 P. 758 (1897) ; *State ex rel. Noonan* v. *King,* 108 Tenn. 271, 276, 67 S.W. 812 (1902) ; *State ex rel. Post-Intelligencer Publishing Co.* v. *Lindsley,* 3 Wash. 125, 126, 27 P. 1019 (1891). It has been generally recognized for two hundred years that legislative power necessarily encompasses fiscal power. As James Madison wrote in The Federalist, "the legislative department alone has access to the pockets of the people, and has in some constitutions full discretion, and in all a prevailing influence, over the pecuniary rewards of those who fill the other departments [of govern-

---

[3] Compare, in the United States constitution, article I, § 8, whose express terms contain authority only to "pay the Debts and provide for the common Defence and general Welfare of the United States" but which has been expansively interpreted to authorize any federal spending that is "general." Tribe, American Constitutional Law § 5-10 (1978).

ment]." The Federalist No. 48 (J. Madison), p. 332 (Van Doren Ed. 1945). Madison, like the plaintiffs before us, was concerned lest the power of the purse create undue dependence in the executive and the judiciary, but concluded that the blend of control and separation of powers that we commonly refer to as checks and balances sufficiently guards against encroachments by any one department of government. The Federalist No. 51 (J. Madison). Madison's view of the polity looks to countervailing power to limit possible legislative excesses and in so doing reinforces our conclusion of the primacy of legislative power over state spending.

Both as a matter of precedent and as a matter of constitutional principle, therefore, we hold that the power to determine a salary system for the compensation of judges is a legislative power. Thus § 51-47 does not violate the separation of powers provided for by articles second and fifth of the constitution of Connecticut.

## II

The plaintiffs' alternate challenge to the constitutionality of § 51-47 as amended is based upon their right to equal protection of the law under article first, § 20, of the Connecticut constitution[4] and § 1 of the fourteenth amendment of the constitution of the United States.[5] As we have recently reiterated, the equal protection provisions of the

[4] Article first, § 20, of the constitution of Connecticut provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his civil or political rights because of religion, race, color, ancestry, national origin or sex."

[5] Section 1 of the fourteenth amendment to the United States constitution provides in pertinent part that no state shall "deny to any person within its jurisdiction the equal protection of the laws."

state and federal constitutions "have the same meaning and the same limitations." *Caldor's Inc.* v. *Bedding Barn, Inc.,* 177 Conn. 304, 314, 417 A.2d 304 (1979); *Horton* v. *Meskill,* 172 Conn. 615, 639, 376 A.2d 359 (1977); *State* v. *Rao,* 171 Conn. 600, 601, 370 A.2d 1310 (1976). Despite the plaintiffs' argument to the contrary, § 51-47 does not violate the constitutional guaranty of equal protection.

The standard by which § 51-47 must be tested, for equal protection purposes, is whether the classifications that it embodies bear a reasonable relationship to a legitimate state interest. Although legislation that employs "inherently suspect" classifications or adversely affects fundamental personal rights is subject to strict scrutiny and requires justification by a compelling state interest; *Horton* v. *Meskill,* supra, 640; *State* v. *Rao,* supra, 602; *Laden* v. *Warden,* 169 Conn. 540, 542–43, 363 A.2d 1063 (1975); the legislation before us is not subject to this higher standard. The plaintiffs cannot and do not maintain that § 51-47 involves a suspect classification. The United States Supreme Court has recognized as suspect, classifications that are based on alienage, national origin, race, and, to a somewhat lesser extent, gender. *Personnel Administrator of Massachusetts* v. *Feeney,* 442 U.S. 256, 272–73, 99 S. Ct. 2282, 60 L. Ed. 2d 870 (1979); *Leech* v. *Veterans' Bonus Division Appeals Board,* 179 Conn. 311, 314, 426 A.2d 289 (1979). Nothing in the judicial salary statute impinges on any of these suspect classifications. The plaintiffs do maintain that they have a fundamental personal right to equal salaries arising out of the constitutional guaranty of the judiciary as an independent department of government. This argument recognizes that the category of "funda-

mental" rights requires a firm constitutional base, such as the right to vote, to travel, to procreate, and to free speech. *San Antonio School District* v. *Rodriquez,* 411 U.S. 1, 34, 93 S. Ct. 1278, 36 L. Ed. 2d 16 (1973); *Frazier* v. *Manson,* 176 Conn. 638, 646, 410 A.2d 475 (1979). As we have held previously, in part I of this opinion, the constitutional provision for separation of powers does not per se guarantee absolute equality of salaries among the judges. Logic requires the conclusion that the independence of the judiciary cannot per se be a sufficient basis to establish equality of salaries as a fundamental right. In the absence, then, either of a suspect classification or of a fundamental right, the constitutionality of § 51-47 must be determined by applying the rational basis test.

We recognize that this two-tier analysis of the law of equal protection, that distinguishes only between legislation requiring strict scrutiny, which typically fails to pass constitutional muster, and legislation requiring a rational basis, which typically does pass, is not sufficiently precise to resolve all cases. Legislation that involves rights that may be significant, though not fundamental, or classifications that are sensitive, though not suspect, may demand some form of intermediate review. See, e.g., *Craig* v. *Boren,* 429 U.S. 190, 197, 97 S. Ct. 451, 50 L. Ed. 2d 397 (1976), and Mr. Justice Powell's concurring opinion, 429 U.S. 210, n.*; Tribe, American Constitutional Law §§ 16-30—16-33 (1978). We perceive no basis, however, in this case, for departure from the criterion of rational basis for the appraisal of the constitutionality of this statute.

The Supreme Court of the United States has consistently reminded us that, when measured by the

rational relationship test, the equal protection guaranty does not take from state legislatures "all power of classification. *Massachusetts Bd. of Retirement* v. *Murgia,* 427 U.S. 307, 314, 96 S. Ct. 2562, 49 L. Ed. 2d 520 [1976]. Most laws classify, and many affect certain groups unevenly, even though the law itself treats them no differently from all other members of the class described by the law. When the basic classification is rationally based, uneven effects upon particular groups within a class are ordinarily of no constitutional concern. *New York City Transit Authority* v. *Beazer,* 440 U.S. 568, 99 S. Ct. 1355, 59 L. Ed. 2d 587 [1979]; *Jefferson* v. *Hackney,* 406 U.S. 535, 548, 92 S. Ct. 1724, 32 L. Ed. 2d 285 [1972]. Cf. *James* v. *Valtierra,* 402 U.S. 137, 91 S. Ct. 1331, 28 L. Ed. 2d 678 [1971]. The calculus of effects, the manner in which a particular law reverberates in a society, is a legislative and not a judicial responsibility. *Dandridge* v. *Williams,* 397 U.S. 471, 90 S. Ct. 1153, 25 L. Ed. 2d 491 [1970]; *San Antonio Bd. of Education* v. *Rodriquez,* 411 U.S. 1, 93 S. Ct. 1278, 36 L. Ed. 2d 16 [1973]. In assessing an equal protection challenge, a court is called upon only to measure the basic validity of the legislative classification. *Barrett* v. *Indiana,* 229 U.S. 26, 29–30, 33 S. Ct. 692, 693, 57 L. Ed. 1050 [1913]; *Railway Express Co.* v. *New York,* 336 U.S. 106, 69 S. Ct. 463, 93 L. Ed. 533 [1949]. When some other independent right is not at stake, see, e.g., *Shapiro* v. *Thompson,* 394 U.S. 618, 89 S. Ct. 1322, 22 L. Ed. 2d 600 [1969], and when there is no 'reason to infer antipathy,' *Vance* v. *Bradley,* 440 U.S. 93, 97, 99 S. Ct. 939, 59 L. Ed. 2d 171 [1979], it is presumed that 'even improvident decisions will eventually be rectified by the democratic process . . . .' Ibid."

*Personnel Administrator of Massachusetts* v. *Feeney,* supra, 272. This court similarly has recognized that the constitution "does not, of course, prevent the legislature from dealing differently with different classes of people. It means only that classifications must be based on natural and substantial differences, germane to the subject and purpose of the legislation, between those within the class included and those whom it leaves untouched." *Tough* v. *Ives,* 162 Conn. 274, 292–93, 294 A.2d 67 (1972); and see *New Orleans* v. *Dukes,* 427 U.S. 297, 303, 96 S. Ct. 2513, 49 L. Ed. 2d 511 (1976); *Gentile* v. *Altermatt,* 169 Conn. 267, 295, 363 A.2d 1, appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976).

The plaintiffs challenge the reasonableness of the classifications of § 51-47 in two respects. In a restatement of their argument derived from their view of the doctrine of separation of powers, they argue that the legislature could have had no legitimate interest in tying salaries to length of service, except for fiscal economy. Furthermore, they argue that it is unconstitutionally discriminatory to limit the differentiated salary system to judges who joined the Superior Court after July 1, 1978. We find neither argument to be persuasive.

The idea of a salary system that correlates salary with length of service is not an idea that is in and of itself revolutionary when applied to the payment of employees in the public sector. That it has not been common to have graduated salaries for judges, that we may deem it unfortunate, that commentators may deem it unwise; American Bar Association Standards Relating to Court Organization, p. 53; does not make longevity an unconstitutional

measuring stick in this case. A salary system that rewards length of service may rationally be thought to create incentives for judges to remain on the bench, with attendant benefits to the state by way of greater judicial effectiveness, which is otherwise difficult to ascertain and evaluate. The rational basis test does not require legislative fine-tuning, as long as legitimate objectives are effectuated with clarity and precision and without undue interference with other competing legitimate claims. Cf. *Shapiro* v. *Thompson,* 394 U.S. 618, 634, 89 S. Ct. 1322, 22 L. Ed. 2d 600 (1969), and *Caldor's, Inc.* v. *Bedding Barn, Inc.,* 177 Conn. 304, 314, 417 A.2d 304 (1979).

The exemption of pre-merger Superior Court judges from the post-merger salary system for new Superior Court judges raises the question whether a classification which is otherwise legitimate fails because it is underinclusive in its reach. The law of equal protection does not require that a legislative act occupy the whole field that is within its regulatory power. *Vance* v. *Bradley,* 440 U.S. 93, 108–109, 99 S. Ct. 939, 59 L. Ed. 2d 171 (1979); *Massachusetts Board of Retirement* v. *Murgia,* 427 U.S. 307, 314, 96 S. Ct. 2562, 49 L. Ed. 2d 520 (1976); *Dandridge* v. *Williams,* 397 U.S. 471, 485, 90 S. Ct. 1153, 25 L. Ed. 2d 491 (1970); *Williamson* v. *Lee Optical Co.,* 348 U.S. 483, 489, 75 S. Ct. 461, 99 L. Ed. 563 (1955); *Halabi* v. *Administrator,* 171 Conn. 316, 323, 370 A.2d 938 (1976); see Tribe, American Constitutional Law § 16-4 (1978). A "gradual approach to the problem is not constitutionally impermissible." *City of New Orleans* v. *Dukes,* 427 U.S. 297, 305, 96 S. Ct. 2513, 49 L. Ed. 2d 511 (1976). The legislature was entitled to make a good faith determination not to impose a salary

reduction on sitting Superior Court judges. Such a judgment is far from "the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment." Id., 303–304.

Under the well-established precedents of the Supreme Court of the United States and of this court, the salary system for the compensation of judges that is contained in § 51-47 has a rational connection to a legitimate legislative objective of strengthening the judiciary of this state. The statute therefore does not violate the equal protection clauses of either the state or the federal constitution.

### III

To the questions in the reservation, we answer as follows:

The first question is answered: No.

The second question is answered: No.

The third question is not reached.

The fourth question is not reached.

No costs will be taxed in this court in favor of any party.

In this opinion the other judges concurred.